# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VIRGINIA BARTON GRIMM, individually and on behalf of all others similarly situated, <br><br>            Plaintiff, <br><br>      v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br> 505 City Parkway West <br> Orange County, CA 92668 <br> **Serve on**: <br>        The Corporation Trust Incorporated <br>        2405 York Rd., Suite 201 <br>        Lutherville Timonium, MD 21093 <br><br>            Defendant. | Case No.: <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## AND CALIFORNIA LAW

1.      Plaintiff, Virginia Barton Grimm, applied for a job with a local community college. She never got the job. The potential employer obtained a report through FIRST ADVANTAGE BACKGROUND SERVICES CORP d/b/a FIRST ADVANTAGE ("First Advantage"). The report provided by First Advantage said that the social security number ("SSN") Grimm provided on her application was not hers. The SSN Grimm provided to the potential employer is and always has been hers and hers alone.

2.      First Advantage is a reseller of the SSN information that it provided to Grimm's potential employer. This inaccurate information was sold to First Advantage by the Defendant, Experian Information Solutions, Inc. ("Experian"), as a product supposedly revealing to its users that an identified consumer was fraudulently using a SSN.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

4.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the FCRA claims in this matter, as they present a federal question. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C.A. §1367.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

6.      Grimm is an adult resident of Anne Arundel, Maryland.

7.      Grimm is a "consumer" as that term is defined by 15 U.S.C. 1681a(c).

8.      The Plaintiff suffered an "Adverse Action" as that term is defined in 15 U.S.C. 1681a(k)(1)(B)(ii).

9.      Experian is a "person" and "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b). Experian is headquartered at 475 Anton Boulevard, Costa Mesa, CA 92626.

10.    As a California based corporation, Experian is obligated to follow California law.  There is a sufficient aggregation of contacts to the Plaintiff's claims for the application of California law to be proper, and the interests of other states do not outweigh California's interest in having its law applied.

11.    Experian is an "investigative consumer reporting agency" as defined by Cal. Bus. & Prof. Code § 1786.2, California Investigative Consumer Reporting Agencies Act (ICRAA)

### EXPERIAN'S "FRAUD SHIELD" sm PRODUCT DOES NOT COMPLY WITH THE FCRA OR CALIFORNIA LAW

12.    Experian offers and sell a product it calls "Fraud Shield."sm   Experian claims that Fraud Shieldsm is "[t]he industry standard in application fraud solutions." Experian also claims on its website:

> Fraud ShieldSM is Experian's most advanced fraud detection technology. It protects you from even the most sophisticated application fraud by launching a comprehensive series of checks, searches and counters to screen every application.
>
> Reduce losses from application fraud and identity theft Fraud Shield identifies inconsistencies between application information and credit report data. Instant multiple crosschecks help you spot fraud before losses    occur.

13.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for employment or housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

14.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer"

and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

15.    15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to ensure the maximum possible accuracy of the information they report.  This section applies to CRAs which sell information to other CRAs.  As discussed below, Defendant routinely violates the FCRA by failing to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports.

16.    The purpose of the ICRAA is to

> require that investigative consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for employment, insurance information, and information relating to the hiring of dwelling units in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of the information in accordance with the requirements of this title.

CA CIVIL § 1786.

17.    The ICRAA, §1786.20, similar to the FCRA, mandates:

> (b) Whenever an investigative consumer reporting agency prepares an investigative consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about      whom the report relates. An investigative consumer reporting agency shall retain the investigative consumer report for two years after the report is provided.

18.    Despite the claims made by Experian, Fraud Shield[sm] does not meet the standard imposed on Experian by the FCRA or the ICRAA.

19.    With respect to the SSN-related information at issue, First Advantage was not expected to, cannot, and does not edit the information it receives from Defendant.

20.     When Defendant responds to requests from First Advantage, it provides First Advantage with data based on a review of Defendant's own databases. When Defendant determines that there are indicia of fraud in its database, it reports to First Advantage what it calls a positive "Fraud Shield$^{sm}$ indicator."

21.     Experian claims to have has twenty-seven different data patterns that it looks for in its database in order to determine whether to return a positive fraud shield indicator. The presence of any one (or more) of these supposed patterns is sufficient to cause Experian to label the consumer with a positive fraud shield indicator. *See https://www.experian.com/assets/decision-analytics/product-sheets/fraud-shield.pdf*

22.     Experian's method of searching its databases for certain kinds of patterns in order to label a consumer with a positive fraud shield indicator does not comply with the legal requirement that Experian use reasonable procedures to ensure maximum possible accuracy.

23.     Experian reported at least one positive fraud shield indicator about Plaintiff to First Advantage. Specifically, the information Experian provided to First Advantage caused First Advantage to report that there is a "HIGH PROBABILITY SOCIAL SECURITY NUMBER PROVIDED BELONGS TO ANOTHER CONSUMER."

24.     The Fraud Shield$^{sm}$ indicator Defendant provided to First Advantage was wrong.  Specifically, Experian's conclusion that Plaintiff's SSN probably belonged or was more strongly associated with another was incorrect; Plaintiff had supplied her own SSN, which had never before been linked to use by another person.

25.     Based on Defendant's published representation that the SSN Plaintiff provided belonged to someone else, First Advantage reported that Plaintiff was "Ineligible" to work for the community college.

26.    This inaccurate reporting caused Plaintiff's employment application to be unsuccessful, causing her a loss of income and emotional distress.

27.    Defendant determines whether a SSN likely belongs to the subject of the report by using an algorithm to determine whether the SSN is most strongly associated with the file belonging to the subject of the report, or with another file in Defendant's vast database.  The strength of the association is determined by the number of accounts or inquires associated with that SSN that appears in a given file.

28.    Experian's database is organized so that Experian often has multiple consumer files in its system, each of which is intended to represent one individual, and each of which has the same social security number. For example, if Sally Smith gets married and changes her name to Sally Jones, Experian may not associate new credit information it receives from banks and other credit issuers with Sally Smith; rather, it might open a new file for Sally Jones, even though the file for both Sally Smith and Sally Jones are associated with the same SSN.  This scenario is even more likely to occur if Ms. Jones moves at the same time as she changes her name, as many newlyweds do.  In this situation, Experian may report that the SSN is more strongly associated with Ms. Smith when Ms. Jones applies for employment or credit, despite the fact that Ms. Smith and Ms. Jones are, in reality, the same person.

29.    Experian's file assignment system is not set up to ensure that all data associated with a single individual is housed in one consumer file.

30.    Experian's choice to use its own internal mechanisms for creating consumer files as a proxy for an indication of fraud is subject to frequent and predictable errors, particularly when, by design, Experian's system allows multiple files to all be associated with the same social security number.

31.     Experian's method to determine whether someone is using a SSN that belongs to someone else is unjustifiably error prone.  Typos, name changes, differing levels of credit usage and a myriad of other problems can cause one person's SSN to be "more strongly associated with" another consumer's file in Defendant's database. Often, the "another consumer" is not another consumer at all—it is the same consumer, but the information was assigned a separate file by Experian's automated system.

32.     Using the prevalence of a SSN as a basis for identifying the likelihood that one person is fraudulently using someone else's SSN is not a reasonable procedure for assuring maximum possible accuracy.

33.     Further, before labeling consumers as likely using someone else's SSN, Defendant does not utilize reasonable procedures to investigate this conclusion.  For example, Defendant does not reach out to the consumer to seek additional proof of identity or information on when and how the individual acquired their SSN.  Nor does Experian undertake any sort of specialized file review prior to returning the fraud indicator to ensure that the fraud indicator indicates fraud, as opposed to Experian maintaining two files on a single individual.

34.     There are reasonable procedures Experian could adopt to avoid falsely labeling consumers with fraud indicators. For example, Defendant could inform consumers of a potential SSN mismatch and ask them to provide proof that the SSN they submitted belongs to them, such as a copy of a Social Security card. However, Experian does not do so.

35.     At the time of the report, Plaintiff had no fraud alerts or other indicia of fraud on her Experian report.

36.     At least two other suits have been brought alleging that Defendant provided First Advantage with incorrect and misleading information regarding a given consumer using a SSN that could not be verified as belonging to the consumer.  *See Price v. Experian Information Solutions, Inc.*, No. 1:18-cv-0340 (C. D. Cal.); *Dahy v. FedEx Ground Package System, Inc., et.al.,* No. 17-1633 (E.D. Pa).

37.     There is no requirement in the FCRA that Defendant create or sell a product purporting to establish the probability that one consumer is using a SSN belonging to another consumer.  Instead, Defendant sells the product as a means to obtain additional revenue over and above its conventional credit reporting.

38.     SSN validation is available directly from the Social Security Administration ("SSA") once an individual has been hired. However, the SSA does not make SSNs publicly available to CRAs.

39.     The SSA does allow true, pre-employment SSN verification through its Consent Based Social Security Number Verification (CBSV) program. CBSV is used by employers and authorized third-party screening companies. However, CBSV requires an SSA consent form, signed by the subject, and imposes a per request fee, $1.00 in 2017.

40.     Defendant knows that without access to information from the SSA it cannot produce accurate pre-employment SSN screening.  Yet, rather than lose out on potential income, Defendant chooses to sell its unreliable product anyway.

41.      On information and belief, Experian undercuts the CBSV's per request price for high-volume requests, such as those from large background checking entities.

42.     Experian's selling model actually allows it to charge a higher per unit price for searches to which it creates a result supposedly indicating fraud than for its results not containing a claim of fraud.  As of 2015, Experian charged as little at $0.18 for a

request leading to a fraud shield indicator, but even less - as little as $0.01 - for a request leading to no fraud shield indicators. Notably, this pricing system strongly incentivizes Experian to provide reports including fraud shield indicators.

43.     Defendant, as well as Defendant's competitors, are well aware of the risks of inaccuracy that come with pre-employment SSN screening.

44.     Many of Defendant's competitors either do not sell SSN screening products at all, or if they do, include a disclaimer that is substantially more detailed than Defendant's statement about probability.

45.     The statement that the SSN provided by a consumer has a "high probability" of belonging to someone else is inherently incompatible with the FCRA's requirement that consumer reporting agencies follow reasonable procedures to assure "maximum possible accuracy" because of the procedures employed by Defendant.

46.     Defendant's probabilistic statement is literally false.  The probability that Plaintiff is using someone else's SSN is zero.  She is using her own SSN.

47.     Nor is Defendant's statement reasonable in the first instance.  Given that the SSA does not make SSNs available to pre-employment screening agencies, Defendant cannot possibly have conducted, or have access to, any studies or other evidence regarding the probability that people who are flagged by Defendant's algorithm are, in fact, using someone else's SSN.  Absent this evidence, Defendant cannot make any reasonable claims which purport to be based on probabilities.

48.     Experian knows that its product is sold to and published by entities like First Advantage for use in employment screening.

49.     After Grimm was notified by First Advantage of the inaccurate reporting, Grimm contacted Experian for a copy of her credit report.

50.    Grimm received a credit report dated February 21, 2017 from Experian.

51.    The credit report provided by Experian stated:

### Personal information

The following information is reported to us by you, your creditors and/or other sources. Each source may report your personal information differently, which may result in variations of your name, address, Social Security number, etc. As part of our fraud protection efforts, a notice with additional information may appear.

52.    The credit report provided by Experian to her did not state her social security number had been associated with a positive Fraud Shield℠ indicator. It did not provide any additional information at all.

## CLASS ALLEGATIONS

53.    Plaintiff asserts this claim individually and on behalf of a class of persons (the "Inaccuracy Class") consisting of:

> All persons about whom, within the 5 years prior to the filing of this Complaint Experian falsely reported a positive Fraud Shield℠ indicator.

54.    Plaintiff also asserts a claim individually and on behalf of a sub-class of persons (the "Disclosure Sub-Class") consisting of:

> All persons about whom, within the 5 years prior to the filing of this Complaint Experian falsely reported a positive Fraud Shield℠ indicator, and who after such report did request a copy of their consumer file, but were not provided the information that her social security number had been associated with a positive Fraud Shield℠ indicator.

55.    The above definitions may be modified.

56.    Upon information and belief, the number of persons who fall within these class definitions is far in excess of 100 persons. This meets the numerosity requirement

of Rule 23(a).  The Defendant's records will permit identification of consumers about whom it issued a report and the members of the class are easily ascertainable.

57.    Experian uses standard automated methods, policies and procedures for the sale, furnishing and use of its Fraud Shield$^{sm}$.. Whether or not Experian's procedures assure the maximum possible accuracy required by the FCRA and ICRAA presents a common and predominant issue of law between the Plaintiff and the class members. This establishes the commonality required by Rule 23(a). Similarly, whether Experian was required to disclose its Fraud Shield$^{sm}$ match to requesting consumers presents such common and predominant issues.

58.    Plaintiff's has the same claims under the FCRA and ICRAA against Experian as the other members have against Experian under the FCRA and ICRAA. This establishes the typicality required by Rule 23(a).

59.    Plaintiff has no interests antagonistic to the class or sub class and is ready, willing and able to protect the interests of the class. Plaintiff is an adequate representative for the class.

60.    Plaintiff has retained counsel experienced in consumer law and class actions, and who are adequate to serve as class counsel.

61.    The common legal issue is also the predominant issue in this case. This establishes the predominance prong of Rule 23(b)(3)

62.    A class action is superior to numerous individual actions since it will cause an orderly and expeditious administration of Class members' claims, and economies of time, effort, and expenses will be fostered and uniformity of decisions will be ensured. A class action will be manageable.

63.     There are no individual questions to establish the claims of the Plaintiff and the Class Members. All claims are based on the failure of Experian to have reasonable procedures to assure maximum possible accuracy of the information that it provides about consumers, and/or the failure to make the same file request disclosure.

## COUNT I
### 15 U.S.C. § 1681e(b)
### *Failure to Follow Reasonable Procedures*

64.     Plaintiff incorporates by reference the foregoing paragraphs.

65.     Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to avoid reporting false information regarding SSNs.

66.     The foregoing violations were willful.

67.     Defendant acted deliberately and in reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681e(b).  Defendant's willful conduct is reflected in the preceding paragraphs and, *inter alia*, the following:

    a.  Defendant has not established any reasonable procedures to assure maximum possible accuracy of its reports generated through its Fraud Shield$^{sm}$ product;

    b.  Defendant knows that its reporting regarding SSNs is not to be relied upon. Rather than stating facts, it states probabilities that an individual is not using their own SSN.  This language is a transparent effort to avoid the requirements of the FCRA;

    c.  Defendant's apparent method of determining which consumer is most strongly associated with an SSN is prone to error.  Defendant could have used procedures to ensure accuracy of this information, such as seeking additional information from the consumer, but failed to do so;

    d.  The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

    e.  Defendant's conduct is inconsistent with the Federal Trade Commission's ("FTC") longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

   f.  Defendant knew or had reason to know that Defendant's conduct
       violated the FCRA; and

   g.  By failing to adopt reasonable procedures, Defendant voluntarily ran a
       risk of violating the law substantially greater than the risk associated
       with a reading that was merely careless.

68.    Defendant's conduct caused Plaintiff to lose a job opportunity, causing
economic harm.

69.    Experian's know that its procedures employed by it do not assure
maximum possible accuracy of the information that it provides about consumers.

70.    Experian's acted willfully when it employed procedures that it knew do not
assure maximum possible accuracy of the information that it provides about consumers.

71.    The Plaintiff and the Class members are entitled to the statutory damages
allowed for the willful violation of the FCRA to compensate them for their concrete
injuries, plus any punitive damages that may be awarded.

72.    Plaintiff and the class are entitled to statutory damages of not less than
$100 and not more than $1,000 per violation.  Plaintiff and the class are also entitled to
punitive damages and to recover costs and attorneys' fees

**RELIEF SOUGHT**

WHEREFORE, the Plaintiff seeks the following relief:

On Count I, the class action claim against Experian:

   a.  The court certify the proposed class and name Plaintiff as class
       representative and her counsel as class counsel;

   b.  Award the Plaintiff and class the statutory damages for the concrete
       injury suffered and as allowed by the FCRA;

c.  Award punitive damages against Experian in an amount to be determined at trial;

d.  Award costs, including attorney fees; and

e.  Such other or further relief the nature of the Plaintiff's cause may require.

### COUNT II
### 15 U.S.C. § 1681g(a)
### *Failure to Disclose that Experian had Reported a Fraud Hit*

73.  Plaintiff incorporates by reference the foregoing paragraphs.

74.  Plaintiff and each sub-class member requested a copy of their consumer file at Experian after the date that Experian had reported a Fraud hit as to that consumer.

75.  Defendant failed to comply with 15 U.S.C. § 1681g(a) by failing to disclose to consumers who had requested their full file that Experian's system contained a positive match for fraud as to Plaintiff and the Sub-class members, and it had reported that to its subscribers.

76.  The foregoing violations were willful.

77.  Defendant acted deliberately and in reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681g(a).  Defendant's willful conduct is reflected in the preceding paragraphs and, *inter alia*, the following:

a.  Defendant has deliberately and intentionally decided to withhold from consumers the same complete Fraud Shield[sm] product results it readily sells to its paying customers;

b.  Defendant knows that consumers who discovered the existence of a Fraud Shield[sm] match in their files would dispute or challenge such reporting either directly or indirectly, thus driving up its costs of addressing dispute investigations;

c. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

d. Defendant's conduct is inconsistent with the Federal Trade Commission's ("FTC") longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

e. Defendant knew or had reason to know that Defendant's conduct violated the FCRA; and

f. By failing to comply with §1681g(a)(1), Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

78.    Defendant's conduct deprived Plaintiff and other sub-class members of a material and concrete harm including the loss of the full economic value of their requested consumer report, the economic as well as non-economic harm caused by delay in Plaintiff's or sub-class member's ability to learn of, research, dispute and obtain correction of inaccurate reporting; and deprivation of a right Congress has determined to have concrete value, and deprivation of which causes concrete harm to lose a job opportunity, causing economic harm.

79.    Experian's acted willfully when it employed procedures that it knew did not provide the full contents of a consumer's file.

80.    The Plaintiff and the Class members are entitled to the statutory damages allowed for the willful violation of the FCRA to compensate them for their concrete injuries, plus any punitive damages that may be awarded.

81.    Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 per violation.  Plaintiff and the class are also entitled to punitive damages and to recover costs and attorneys' fees

**RELIEF SOUGHT**

WHEREFORE, the Plaintiff seeks the following relief:

On Count I, the class action claim against Experian:

f. The court certify the proposed class and name Plaintiff as class representative and her counsel as class counsel;

g. Award the Plaintiff and class the statutory damages for the concrete injury suffered and as allowed by the FCRA;

h. Award punitive damages against Experian in an amount to be determined at trial;

i. Award costs, including attorney fees; and

j. Such other or further relief the nature of the Plaintiff's cause may require.

## COUNT III: Cal. Bus. & Prof. Code § 1786.20
## California Investigative Consumer Reporting Agencies Act (ICRAA)

82. Plaintiff incorporates by reference the foregoing paragraphs.

83. Defendant is an investigative consumer reporting agency as defined by the ICRAA, and Defendant was required to adhere to the requirements of the ICRAA.

84. The ICRAA required Defendant to follow reasonable procedures to assure maximum possible accuracy of the information it reported. Cal. Civ. Code § 1786.20(b).

85. For all the reasons in the above paragraphs, by asserting that Plaintiff's SSN was likely not her own, Defendants failed to follow reasonable procedures, and reported inaccurate information.

86. Plaintiff is entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**RELIEF SOUGHT**

WHEREFORE, the Plaintiff seeks the following relief:

On Count II, the class action claim against Experian:

> a.  The court certify the proposed class and name Plaintiff as class representative and her counsel as class counsel;
>
> b.  Grant injunctive relief;
>
> c.  Award costs, including attorney fees; and
>
> d.  Such other or further relief the nature of the Plaintiff's cause may require.

## COUNT IV: Cal. Bus. & Prof. Code § 17200
## Unlawful, Unfair, or Fraudulent Conduct

87.  Plaintiff incorporates by reference the foregoing paragraphs.

88.  Defendant was required to adhere to the requirements of the UCL.

89.  By asserting that Plaintiff and Class Members' SSN were not likely not their own, Defendant diminished Plaintiff's employment opportunities.

90.  Defendant's inaccurate reporting constituted unlawful, unfair, and fraudulent business practices.

91.  Defendant's practices were unlawful because they violate the FCRA and/or the ICRAA.

92.  Defendant's practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to falsely represent that consumers' SSNs are likely not their own.

93.     Defendant's practices were fraudulent because the report recipients were deceived and/or were likely to be deceived by Defendant's inaccurate representations that Plaintiff and class members were likely identity thieves.

94.     The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

95.     Plaintiff and the Class are entitled to restitution.

96.     Plaintiff and the class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff seeks the following relief:

On Count III, the class action claim against Experian:

a.  The court certify the proposed class and name Plaintiff as class representative and her counsel as class counsel;

b.  Grant restitution and injunctive relief;

c.  Award costs, including attorney fees; and

d.  Such other or further relief the nature of the Plaintiff's cause may require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 21, 2018                VIRGINIA BARTON GRIMM

By: _/s/ Peter A. Holland_____
    Peter A. Holland
    Fed. Bar No. 10866
    Emanwel J. Turnbull
    Fed. Bar No. 19674

THE HOLLAND LAW FIRM, P.C.
P.O. Box 6268
Annapolis, MD 21401
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

Scott C. Borison
Fed Bar No. 22596
Borison@legglaw.com
Legg Law Firm, LLP
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Borison@legglaw.com

MD Office:
38 S. Paca St. #116, Suite B
Baltimore MD 21201
 (301) 620-1016
Fax: (301) 620-1018

*Counsel for Plaintiff*